UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>SAMUEL CRUZ | No. 3:18-cr-81 (SRU) |

# ORDER

Samuel Cruz, currently incarcerated at FCI Allenwood Medium ("Allenwood"), has filed a motion for sentence reduction to time served under under 18 U.S.C. § 3582(c)(1)(A)(i), as amended in 2018 by the First Step Act ("FSA"). Cruz generally contends that his underlying medical conditions, in conjunction with his increased risk of contracting Covid-19 while incarcerated at Allenwood, warrant sentence reduction to time-served. *See* Mem. in Supp. of Sentence Reduction, Doc. No. 1146 at 1 ("Def.'s Mem"). Cruz additionally points to his record of rehabilitation while incarcerated in support of his motion for release. *Id.* Cruz, who has been incarcerated since his arrest on April 25, 2018, was sentenced to a five-year mandatory minimum term of incarceration in June 2019 and has served nearly three years of that sentence to date. *See* Presentence Report ("PSR"), Doc. No. 713 at 1; Judgment, Doc. No. 739.

On November 30, 2020 the government filed a memorandum in opposition to Cruz's motions for release. *See* Doc. No. 1150. The government concedes that, based on his underlying health conditions, Cruz has established that extraordinary and compelling reasons support release. *Id.* at 11. However, the government argues that Cruz has not established that release is warranted because of the seriousness of the crime for which Cruz was convicted and in light of his fairly lengthy criminal history. *Id.* at 11-12. Accordingly, the government requests that if

Cruz's motion is granted, that he be released into strict home confinement for the remainder of his sentence, followed by the full four-year term of supervised release. *Id.*

For the reasons that follow Cruz's motion is **granted.**

**I.       Standard of Review**

Until 2018, the statute authorizing motions for sentence reduction (or "compassionate release") vested the exclusive authority to bring a motion with the director of the Bureau of Prisons ("BOP"), based upon a showing of "extraordinary and compelling reasons" warranting relief. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The statute did not specifically define the phrase "extraordinary and compelling"; instead, under 28 U.S.C. § 994(t), the Sentencing Commission was tasked with describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission ultimately did so in Guideline Section 1B1.13, which provides in part that "upon motion of the Director of the Bureau of Prisons," a court may reduce a sentence under Section 3582 if "extraordinary and compelling reasons warrant the reduction" and "the defendant is not a danger to the safety...of the community." U.S.S.G. § 1B1.13(2).

Although section 1B1.13 does not specifically define the phrase "extraordinary and compelling reasons," application notes (1)(A)-(D) to that section provide in part that extraordinary and compelling reasons warranting relief may exist where a defendant is "suffering from a serious physical or medical condition." *Id.* at n.1(A)(ii)(I). Finally, application note 1(D) includes a catch-all provision providing for release where the Director of the BOP determines "there exists…an extraordinary and compelling reason other than" the reasons enumerated. *Id.* at 1(D). Despite the broad discretion afforded to the BOP to define what constitutes extraordinary and compelling reasons for sentence reduction, the BOP has used its power to bring motions

under section 3582 very sparingly. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program 1* (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (finding that on average, only 24 incarcerated people per year were released on motion of the BOP).

In 2018, Congress moved to expand the use of motions for compassionate release by passing the First Step Act ("FSA"), which amended Section 3582 to allow defendants to file motions for sentence reduction directly, following the exhaustion of "administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020); 18 U.S.C. § 3582(c)(1)(A)(i).

Despite the significant changes made to the statutory scheme governing motions for sentence reduction, the Sentencing Commission has failed to update section 1B1.13 since the FSA was passed. *Brooker*, 976 F.3d 228 at 233. As a result, the language of section 1B1.13 and the associated application notes still define "extraordinary and compelling reasons for release" only in the context of motions brought by the BOP, and not by defendants directly. *Id.* That tension between the language of section 1B1.13 and the recently-enacted FSA left unclear the standard that a district court reviewing a motion brought directly by a defendant should apply. *See United States v. Fox*, 2019 U.S. Dist. LEXIS 115388, at *4-5 (D. Me. July 11, 2019) (collecting cases). Some courts concluded that section 1B1.13's narrow definition of "extraordinary and compelling reasons" for relief remained binding even after passage of the FSA. *Id.* Others, however, concluded that a court reviewing a motion brought directly by a defendant had full discretion to determine what factors constituted "extraordinary and compelling" reasons for relief under section 3582. *Id.*

The Second Circuit addressed that issue directly in *Brooker*, ultimately concluding that a district court considering a motion for compassionate release brought directly by a defendant is free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker*, 976 F.3d 228 at 237. "Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id*.

The expanded discretion afforded to district courts considering motions for sentence reduction on motion of a defendant comes amidst the global Covid-19 pandemic, during which courts in this Circuit and around the country have granted motions for compassionate release where a defendant establishes that he or she suffers from an underlying condition that increases the risk of developing severe complications from a Covid-19 infection. *See, e.g., United States v. Colvin*, 451 F. Supp. 3d 237 (D. Conn. 2020). In doing so, many have relied on guidelines published by the Centers for Disease Control and Protection ("CDC") specifying which underlying conditions may increase the risk of developing severe illness or complications due to a Covid-19 infection. *See, e.g., United States v. Rojas*, 2020 U.S. Dist. LEXIS 238647, at *2 (S.D.N.Y. Dec. 18, 2020); *United States v. Vondette*, 2020 U.S. Dist. LEXIS 237750, at *6 (E.D.N.Y. Dec. 17, 2020).

An additional factor relevant to the consideration of whether sentence modification in a particular case is warranted is the high risk of spread of Covid-19 within prisons, where inmates are forced to live in close quarters without the ability to social distance and often do not have access to hygienic products such as hand sanitizer. *See, e.g., United States v. Park*, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020) ("the nature of prisons...puts those incarcerated inside a facility with an outbreak at heightened risk"); *see also* THE MARSHALL PROJECT, A State by State Look

at Coronavirus in Federal Prisons, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons#prisoner-deaths (noting that since the outbreak of the virus, there have been at least 2,506 deaths from coronavirus reported among prisoners) (last visited 04/05/2021).

Courts reviewing motions for sentence modifications have additionally considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences "harsher and more punitive than would otherwise have been the case." *United States v. Rodriguez*, 2020 U.S. Dist. LEXIS 181004, at *7 (S.D.N.Y. Sept. 30, 2020); *see also United States v. Ciprian*, 2021 U.S. Dist. LEXIS 18698, at *8 (S.D.N.Y. Feb. 1, 2021) ("A day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing.").

Finally, although evidence of a defendant's rehabilitation while incarcerated is insufficient in and of itself to support a motion for sentence reduction, it may "interact with the present coronavirus pandemic" to weigh in favor of release. *Brooker*, 976 F.3d at 238; *see also United States v. Rios,* 2020 U.S. Dist. LEXIS 230074, at *13 (D. Conn. Dec. 8, 2020) (granting release in part due to defendant's "rehabilitation and relatively negligible disciplinary record"); *Rodriguez*, 2020 U.S. Dist. LEXIS 181004 at *8-9 ("while rehabilitation alone is insufficient, it can interact with the present coronavirus pandemic to create an extraordinary and compelling reason for a sentence reduction.").

Despite the expanded discretion afforded to courts to determine where extraordinary and compelling reasons warrant sentence modification, however, a court reviewing a motion under

section 3582 is still required to ensure that a modification would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. 3582(c)(1)(a); *United States v. Madoff*, 465 F. Supp. 3d 343, 348 (S.D.N.Y. 2020). Accordingly, a court must consider the seriousness of the offense, the risk to the public from possible further crimes by a defendant and the need to adequately deter criminal conduct, among other factors. 18 U.S.C. § 3553(a)(2)(A)-(D). On motion for compassionate release, a defendant bears the burden of establishing that sentence reduction is warranted. *Madoff*, 465 F. Supp. 3d 343, 350; see also *United States v. Morales*, 2020 U.S. Dist. LEXIS 151583, at *5 (D. Conn. Aug. 20, 2020).

## II.     Background

On March 14, 2019, Cruz entered a plea of guilty to one count of a superseding indictment charging him with conspiracy to possess and distribute heroin and cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(i,ii). Cruz's indictment followed a lengthy investigation by the Drug Enforcement Agency ("DEA") into suspected heroin and cocaine distribution by two of Cruz's co-defendants, Duane Filyaw and Salvatore Orsini and a number of their associates. Govt.'s Mem. Doc. No. 1150 at 2; *see also* PSR at ¶¶ 7-9. In 2018, DEA agents sought and obtained authorization to intercept telephone communications among targets of the investigation and began monitoring Filyaw's calls, among others. *Id.* Based on intercepted calls between Filyaw and Cruz, the government alleged that Cruz had participated in the conspiracy by obtaining small quantities of both heroin and cocaine from Filyaw and then reselling the drugs to a small group of buyers. *Id.* at ¶ 13. After pleading guilty, Cruz received the mandatory minimum sentence of 60 months' incarceration followed by a four-year-term of supervised release. *See* Judgment Doc. No. 739. That below-guidelines sentence reflected a low risk of

recidivism and his "excellent" conduct while incarcerated awaiting sentencing, among other factors. *Id.*

Cruz, who grew up in New Haven, has a fairly lengthy criminal history in Connecticut Superior Court dating back to 1994. PSR. Doc. No. 713 at ¶¶ 44, 29-37. The majority of his convictions were for non-violent, drug-related offenses; however, Cruz was convicted in 2015 for criminal possession of a gun and was on supervised parole for that charge at the time he was charged with the instant offense. *Id.*

Cruz, who is a father to three children, has experience working with machinery and is trained as a painter. *Id.* at ¶ 57. Prior to the conviction in the case at bar, he worked most recently as a house painter, and plans to return to that field of employment if released. *Id.* at ¶ 57. He has been married since 2015 to the mother of his youngest child, who lives in New Haven and with whom he has kept in close contact while incarcerated. *Id.* at ¶ 51; *see* Def.'s Mem. Doc. No. 1146 at 11.

### III.     Discussion

#### A.     **Exhaustion**

Under the FSA, a defendant may bring a motion for compassionate release only after exhausting all administrative rights to appeal a failure of the BOP to bring such a motion, or after the lapse of 30 days from the filing of such a motion with the warden of the defendant's facility. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Sturgis*, 2020 U.S. Dist. LEXIS 219102, at *9 (W.D.N.Y. Nov. 23, 2020).

Cruz submits with his motion for release a response from the warden of Allenwood, Catricia L. Howard, denying his motion for compassionate release. *See* Exhibit A. The

government acknowledges that Cruz's request for compassionate release was denied and agrees that the motion is properly before me. *See* Govt's Mem., Doc. No. 1150 at 8.

**B.      Extraordinary and Compelling Reasons**

Cruz indicates that he suffers from multiple conditions that increase his risk of developing severe complications were he to contract Covid-19, including obesity, asthma, a history of smoking, and high blood pressure. Def.'s Mem. Doc. No. 1146 at 5. He additionally submits as an exhibit to his motion a copy of his medical records. *See* Doc. No. 1148 (filed under seal). Specifically, Cruz notes that his BMI of 30 classifies him as between overweight and obese according to CDC guidelines, and cites to studies indicating that obesity greatly increases the risk of developing severe complications due to Covid-19. Def.'s Mem. Doc. No. 1146 at 5; *see* CENTERS FOR DISEASE CONTROL, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 5, 2021); *see also* Roni Caryn Rabin, "*Obesity Raises the Risk of Death From Covid-19 Among Men*," N.Y. TIMES (Aug. 14, 2020), https://www.nytimes.com/2020/08/14/health/covid-19-obesity.html. He additionally reports that he has suffered from asthma since childhood (although those records are not available) and smoked cigarettes from the age of 13 until 2015. Def.'s Mem. Doc. No. 1146 at 7. Although he has not been formally diagnosed with hypertension, he reports that a recent blood-pressure reading reflects a possible diagnosis of stage one hypertension. *Id.* at 7. Cruz notes that CDC guidelines identify all four conditions obesity, hypertension, asthma and a history of smoking as risk factors for developing severe illness due to Covid-19. *See id.* Cruz additionally reports that, as of March 5, 2021, he had not been offered the Covid-19 vaccine and is therefore still actively at risk of contracting the virus. *See* Def.'s Supp. Mem. Doc. No. 1193 at 2.

Cruz additionally argues that he is at greater risk of contracting Covid-19 while incarcerated, noting that the very nature of confinement makes it impossible to properly social distance and take necessary precautions. *Id.* at 9. At the time he filed his motion, Allenwood was experiencing a significant outbreak of Covid-19 among inmates; Cruz notes that the virus spread very rapidly, and that one positive case quickly turned to many. *Id.*

Additionally, Cruz notes that, in an attempt to curb the spread of the virus, the BOP has imposed harsh lockdowns and restrictions on inmates, largely confining them to their cells. *Id.* at 11. Cruz reports that Allenwood has been put on numerous months-long lockdowns since the start of the pandemic, and that he has therefore spent more than six months confined to his cell—which he shares with another inmate—twenty-four hours a day, seven days a week, with the exception of a ten-minute shower every three days. *Id.* at 11. During those periods of lockdown, he was additionally unable to call or email with his wife and three children; additionally, the Residential Drug Treatment Program ("RDAP"), which he had been participating in prior to the lockdowns, has been put on hold. *Id.* Cruz contends that those conditions have made his sentence far harsher and more punitive than contemplated at the time of sentencing, noting that "each day spent in lockdown equates to much more than one typical prison day." *Id.* at 11. Cruz therefore contends that those conditions of confinement additionally constitute extraordinary and compelling circumstances weighing in favor of release. *Id.* at 12.

Finally, Cruz points to his exemplary record of rehabilitation while incarcerated, noting that he has been employed as a sanitation worker for the duration of his confinement at Allenwood and has accrued no disciplinary violations while incarcerated. *Id.* at 12; *see also* Def.'s Ex. B.

In response, the government maintains that Cruz has failed to demonstrate that his risk of contracting Covid-19 is higher while incarcerated than it might be in home confinement, arguing that the virus has been well-managed at Allenwood. Govt's Mem. Doc. No. 1150 at 10. The government contends that the mere existence of Covid-19 cases at a facility cannot establish that the BOP is incapable of managing the pandemic, without more, support sentence modification. Govt's Mem. Doc. No. 1150 at 10. Nonetheless, the government concedes that because Cruz "has established the existence of one or more conditions which, at least marginally, make him more susceptible to serious complications if he is infected…there exists an extraordinary and compelling reason for compassionate release." *See* Doc. No. 1150 at 11.

Cruz has established that extraordinary and compelling reasons support his release. First, he reports that he suffers from obesity and has a history of asthma and smoking, as well as possible hypertension, conditions that, according to the CDC, increase his risk of suffering severe complications were he to contract Covid-19. *See supra* "People with Certain Medical Conditions." Moreover, courts in this district have recognized that those conditions—alone or in combination—may constitute extraordinary and compelling reasons supporting sentence modification. *See, e.g., United States v. Bruno,* 2020 U.S. Dist. LEXIS 200098, at *9 (D. Conn. Aug. 3, 2020) ("obesity constitutes an extraordinary and compelling reason for early release"); *United States v. Hamlett*, 2021 U.S. Dist. LEXIS 22129, at *21 (D. Conn. Feb. 5, 2021) ("[w]ith respect to hypertension, courts in this District, and other courts in this Circuit, have held that this condition, combined with the Covid-19 pandemic, may constitute extraordinary and compelling reasons for release."); *United States v. Morales*, 2020 U.S. Dist. LEXIS 77037, at *6 (D. Conn. May 1, 2020) ("a number of courts have held that, in light of the Covid-19 pandemic, an inmate with asthma has demonstrated an "extraordinary and compelling" reason for sentence

reduction"); *United States v. Brunstorff*, 2020 U.S. Dist. LEXIS 191939, at *13 (D. Conn. Oct. 16, 2020) (denying motion for release but conceding that defendant's past use of cigarettes increased risk of severe illness due to Covid-19).

The risk of contracting Covid-19 while incarcerated at Allenwood is also not theoretical; although the virus appears to be presently under control, the wild fluctuations in case numbers at BOP facilities—including Allenwood—throughout the course of the pandemic make clear that, unfortunately, once an outbreak begins, it is incredibly difficult to control in a communal-living environment. *See, e.g.,* Lisa B. Puglisi, et al., *Estimation of COVID-19 Basic Reproduction Ratio in a Large Urban jail in the United States*, Ann Epidemiol. 2021 Jan; 53: 103-105, doi: 10.1016/j.annepidem.2020.09.002 (incarcerated individuals are at higher risk for infection due to unsanitary living conditions and inability to socially distance); *United States v. Skelos*, 2020 U.S. Dist. LEXIS 64639, at *3 (S.D.N.Y. Apr. 12, 2020) ("Jails and prison are powder kegs for infection."). Although the BOP has surely undertaken significant measures to control the spread of the virus, it is undeniable that the risk of transmission of an airborne virus like of Covid-19 is much higher in communal settings where it is difficult to maintain social distancing or obtain access to hygienic products, as reports of outbreaks in prisons around the country have made clear. *See, e.g.,* THE MARSHALL PROJECT, "*I Begged Them To Let Me Die": How Federal Prisons Became Coronavirus Death Traps* (June 18, 2020), https://www.themarshallproject.org/2020/06/18/i-begged-them-to-let-me-die-how-federal-prisons-became-coronavirus-death-traps. The government's position that Cruz cannot demonstrate that he is at greater risk of contracting the virus while incarcerated is therefore unavailing.

11

Finally, Cruz's exemplary record of rehabilitation—his lack of disciplinary history, steady record of employment while incarcerated and efforts to complete the RDAP program—additionally support that conclusion. Accordingly, after considering Cruz's underlying medical conditions, the risk posed by Covid-19 outbreaks at Allenwood and the severity of punishment due to the Covid-19 pandemic, I conclude that Cruz has established extraordinary and compelling reasons supporting release.

### C. Section 3553(a) Factors

Even where extraordinary and compelling reasons support sentence modification, a court considering a motion for sentence reduction must also consider the sentenceing factors set forth in 18 U.S.C. § 3553(a). *Madoff*, 465 F. Supp. 3d at 348. Those factors include: (1) the seriousness of the underlying offense, promoting respect for the law, and providing just punishment; (2) affording adequate deterrence; (3) protecting the public from further crimes of the defendant; and (4) providing the defendant with training, medical care, and other treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The nature and circumstances of the offense, as well as the history and characteristics of a defendant, are also relevant considerations under section 3553(a). *See id.* § 3553(a)(1).

Cruz asserts that a sentence of time-served and a period of home confinement is sufficient to accomplish the goals of sentencing. *See* Def.'s Mem. Doc. No. 1146 at 13. Initially, Cruz notes that as of the time of filing his original motion for sentence reduction, he had served over 30 months of a 60-month sentence. *See id.* at 13; Judgment, Doc. No. 739. Cruz additionally reports, by way of a supplemental memorandum to his original filing, that due to an error in his BOP file incorrectly indicating that he was subject to a state parole detainer, he was not given sentence credit for his participation in the RDAP program and deemed ineligible for halfway

12

house placement. *See* Def.'s Supp. Mem. Doc. No. 1193 at 2. After correction of that error, his release date has been moved up significantly, from July 29, 2022 to December 25, 2021. *Id.* He will additionally become eligible for halfway house placement soon—possibly by the summer. *Id.* Cruz contends that the impending end of his sentence additionally weighs in favor of release in light of the significant amount of time that he has already served. *Id.*

Cruz also asserts that the experience of incarceration, especially in light of the underlying medical conditions that have put him at greater risk of suffering complications due to a Covid-19 infection, have increased not only the punitive nature of his sentence but also its deterrent effect. For Cruz, "the risks of any future criminal activity or violations of conditions have increased; it is not just his liberty at stake anymore, but also his life." Def.'s Mem. Doc. No. 1146 at 15. Finally, Cruz asserts that "home confinement and supervised release conditions will substantially restrict his liberty which should lend further assurance to the Court that Mr. Cruz will not be a danger to the community". *Id.* at 15-16 (citation omitted). In support of that claim, Cruz additionally submits a detailed release plan, requesting that I release him to his sister's home in East Haven where he will have his own bedroom and space to quarantine if required. *Id.* at 16.

The government opposes Cruz's motion for release due to his "serious criminal history", noting that of Cruz's nine prior convictions, six were felonies. The government additionally points to the severity of the underlying crime at issue which involved "the organized distribution of controlled substances." Govt's Mem. Doc. No. 1150 at 11. Cruz additionally committed several of the offenses in his record, including the underlying federal offense in the instant case, while under court supervision, which the government argues should weigh against release. *Id.* The government does concede, however, that Cruz's lack of a disciplinary record and detailed release plan may weigh in favor of release. *Id.* at 12.

13

After consideration of the section 3553(a) factors, I agree that release is warranted. First, as I noted at Cruz's Sentencing Hearing in November 2019, Cruz played a relatively minor role in the conspiracy—although that crime was, of course, serious, Cruz's participation was never alleged to be significant. *See* Trans. of Sent. Hrg. Doc. No. 867 at 16. Moreover, Cruz was subject to a mandatory minimum on the basis of his plea agreement, leaving me without discretion to consider that factor at the time of sentencing. *Id.*

I additionally note, as I did at the time of sentencing, that Cruz has shown real commitment to rehabilitation and avoiding further incarceration. His disciplinary record while incarcerated is exemplary; his work ethic has been similarly strong. At both the sentencing hearing and in his PSR interview, Cruz was additionally forthcoming about struggles with substance abuse and indicated that he was open to seeking treatment. *Id.* at 15. Cruz has stood by that commitment to the extent possible by beginning the RDAP program while incarcerated, prior to lockdowns at Allenwood. Def.'s Mem. Doc. No. 1146 at 11. It is additionally clear that to the extent that a goal of incarceration is to provide a particular individual with services or rehabilitation, months spent on lockdown in a cell without access to programming does not further that goal.

Moreover, Cruz's efforts toward rehabilitation additionally reduce the likelihood of recidivism and, accordingly, reduce my concern that release could pose a danger to public safety. Cruz additionally submits a detailed plan for release, indicating that if his motion is granted, he has plans to reside with family and take the first steps toward building back a career following incarceration. That release plan additionally supports my conclusion that Cruz poses a low risk of recidivism.

Additionally bearing on my decision, Cruz is fast-approaching the end of the sentence I imposed in 2019. To date, he has served nearly 35 months of the five-year sentence imposed in 2019, a factor I have previously considered in determining whether to grant a motion for sentence reduction. *See, e.g., United States v. Sturdivant,* 2020 U.S. Dist. LEXIS 218557, at *16 (D. Conn. Nov. 23, 2020). That fact is especially significant in light of the current Covid-19 pandemic and Cruz's lack of access to the vaccine; as one court explained, in the context of a similar motion where a defendant was very near the end of a his sentence, "[t]he benefits of keeping [a defendant] in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave." *United States v. Perez*, 451 F. Supp. 3d 288, 294 (S.D.N.Y. 2020). Moreover, Cruz has served a significant part of that three-year period of incarceration in extremely harsh conditions, without the support of visits from family, in an environment where he has been exposed daily to the risk of a deadly virus—an especially daunting experience for someone with underlying medical conditions such as Cruz's.

Accordingly, after considering Cruz's role in the underlying offense, his efforts toward rehabilitation while incarcerated and the fact that he has served over half of his sentence, I find that a sentence reduction to time-served would not undermine the goals of sentencing and weighs in favor of release.

### IV. Conclusion

For the foregoing reasons, Cruz's motion for sentence reduction to time-served [doc. nos. 1131, 1145] is **granted**. He shall be immediately released from BOP custody. Cruz must spend the first six months following his release on home confinement, after which he shall commence serving his four-year term of supervised release consistent with the conditions previously imposed. He must also make immediate arrangements to receive the Covid-19 vaccine. Cruz

must contact the United States Probation Office as soon as possible, but in no event later than 72 hours after his release.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 6th day of April 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge